UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

RANDY DOUGHARTY,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        No.:   3:24-CV-83-TAV-DCP
                                    )
METROPOLITAN LIFE INSURANCE         )
COMPANY OF AMERICA,                 )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment [Docs. 16, 18]. The parties have responded and replied to the respective motions [Docs. 19, 20, 22, 24]. Accordingly, this matter is ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons stated below, both plaintiff's Motion for Summary Judgment on the ERISA Record [Doc. 16] and defendant's Motion for Judgement on the Record [Doc. 18] will be **DENIED**.

## I.    Background

This action arises from defendant's alleged miscalculation of insurance benefits to plaintiff under a long-term disability plan governed by the Employee Retirement Income Security Act ("ERISA"). Plaintiff seeks damages for unpaid benefits and an order requiring defendant to pay recalculated benefits as long as he remains disabled, pursuant to 29 U.S.C. § 1132(a)(1)(B) [Doc. 1].

In August 2020, plaintiff stopped work as a truck driver for TForce Holdings USA, Inc. ("TForce") due to lumbago from sciatica and idiopathic neuropathies [Doc. 15-20, pp.

76–79].[1]  Plaintiff's employer, TForce, maintained a group long-term disability insurance policy on behalf of its employees [Doc. 13-1, pp. 3–4].  A copy of this policy and attachments, issued by defendant, are included in the ERISA record [*Id.* at pp. 5–65].[2]  The policy states that it provides a monthly benefit equal to 60 percent of the first $16,667 of the insured's "Predisability Earnings" subject to certain conditions [*Id.* at 23].  The term "Predisability Earnings" is later defined as "gross salary or wages You were earning from the Policyholder in effect on the first of the year prior to the date Your Disability began.  We calculate this amount on a monthly basis" [*Id.* at 26].  In an "ERISA Information" attachment to the policy, defendant specifies the following in regard to the determination of disability benefits claims:

> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

[*Id.* at 63].

---

[1]  As plaintiff notes, "both parties agree that [he] is disabled under the policy" [Doc. 17, p. 4].  Given that the parties' dispute centers on the calculation of pre-disability earnings, the Court does not recount detailed information regarding plaintiff's medical diagnoses and treatment.

[2]  Although defendant submits that it "filed [the record] with the Court under seal," the Court notes that these documents are not presently sealed [Doc. 18-1, p. 2 n.1].  If either party wishes to seal plaintiff's sensitive medical records, the Court will entertain a motion to that effect.

2

In his disability claim filing[3] on January 20, 2021, plaintiff indicated that he first sought treatment for these conditions on August 3, 2020 [*Id.* at 86]. Defendant appears to have contacted plaintiff's employer regarding this claim, requesting, *inter alia*, "his salary as of the first of the year prior to his date of disability" [*Id.* at 27]. A TForce representative responded with "Annual Benefits Base Rate - $77,098.79" [*Id.*]. In response to defendant's initial denial of plaintiff's claim, he sought additional information, including the monthly benefit to which he would be entitled if he were to later receive a favorable coverage determination [Doc. 15-15, pp. 78–80]. Defendant responded to this request, indicating that plaintiff would be eligible for $3,854.94 per month if his claim was ultimately approved [*Id.* at 76].

From November 2022 through early 2023, plaintiff's counsel corresponded with defendant, requesting additional information regarding its initial denial of plaintiff's claim [*see, e.g.*, Doc. 13-10, pp. 93–95]. On May 8, 2023, plaintiff's counsel requested a 30-day extension to file his appeal from defendant's benefit determination [*Id.* at 48]. On June 15, 2023, in response to defendant's email indicating that no extension would be granted, plaintiff stated his intention to appeal by a revised deadline of July 10, 2023, based upon the United States Department of Labor's ("Labor") COVID-19 extension guidance [*Id.* at 43]. On July 10, 2023, plaintiff submitted a letter designated as his "written appeal,"

_____

[3] A "full and complete copy" of plaintiff's claim history, which exceeds 500 pages, appears to be included in the ERISA record pursuant to the Court's Scheduling Order [Doc. 13-3, pp. 66–586; Doc. 10].

requesting that defendant "overturn the denial and make a favorable decision on [his] claim for long-term disability benefits immediately" [Doc. 13-9, p. 39]. In this appeal, he stated:

> First, this letter serves as Mr. Dougharty's written appeal of the amount ($3,854.94) that MetLife has calculated as his monthly benefit. MetLife appears to have calculated this amount based on a 'benefits base pay' of $77,098.79. However, Mr. Dougharty's predisability income was based on a mileage rate, not a base pay. Under the policy, his benefit amount should be calculated based on the amount that he was earning rather than the 'benefits base rate' that MetLife is using . . .
>
> His average weekly earnings were $1,718.28. Based on this, his actual monthly predisability earnings were $7,445.88. His monthly benefit should be $4,467.53. After accounting for Mr. Dougharty's receipt of Primary Social Security benefits ($2,134), his net monthly benefit is $2,333.53 and his claim has been underpaid $612.60 per month. The policy does not contain a definition for wages or salary that would exclude Mr. Dougharty's mileage pay from his benefit calculations, and his paystubs show that this his regular wages consisted of mileage pay.

[*Id.*]. Defendant acknowledged receipt on July 14, 2023, and stated that it would "notify you of our decision in writing" "within 45 days" [*Id.* at 36].

On July 19, 2023, defendant requested additional information from plaintiff to facilitative its review of his appeal, including office visit notes, MRI reports, and diagnostic reports [*Id.* at 34]. Plaintiff responded to this request on July 28, 2023, indicating that he was requesting certain MRI and diagnostic reports and would need an extension of 30 days to submit this information [*Id.* at 32]. He also stated that "[w]e understand that MetLife would need to toll the time that it takes us to submit this information" [*Id.*]. Defendant granted this extension and stated its intention to decide on plaintiff's appeal by October 8, 2023 [Doc. 13-4, p. 10]. On September 26, 2023, defendant reversed its previous denial and determined that plaintiff was entitled to benefits [Doc. 13-1, p. 610]. On October 4,

4

2023, defendant again confirmed this decision [*Id*. at 599]. Apart from a request that plaintiff complete an additional form on October 4, 2023, the ERISA record does not reflect any additional responses to plaintiff's appeal [*see* Doc. 13-1, pp. 575–84].[4]

## II.    Standard of Review

The parties dispute the applicable standard of review. Plaintiff argues that because defendant failed to render a decision as to the benefit calculation part of his appeal within the applicable timeframe, the Court should apply a *de novo* standard of review [Doc. 17, p. 5]. Specifically, he cites Labor regulations that require plan administrators to respond to an appeal within 45 days [*Id*. at 5–6 (citing 29 C.F.R. § 2560.503-1(i)(3)(i))]. He submits that the applicable deadline for defendant to respond to his appeal was August 24, 2023, before which defendant did not respond to his benefit calculation appeal in writing [*Id*. at 6]. Under an amendment to ERISA regulations that took effect in 2017,[5] plaintiff contends that he is entitled to *de novo* review because defendant failed to strictly comply with § 2560.503-1(i)(3)(i) [*Id*. at 6–7 (citing *id*. § 2560.503-1(l)(2)(i))].

---

[4]  The Court notes that the final entries of defendant's claim activity log contained in the above-cited pages are redacted. No additional version of this log has been filed; so, it is impossible for the Court to discern whether and to what extent defendant responded to plaintiff's appeal after the last visible entry on October 4, 2023.

[5]  The parties variously refer to this amendment by the years 2016 and 2018 [*see* Doc. 17, p. 7; Doc. 20, p. 5]. For avoidance of doubt, the Court notes that Labor finalized the regulation in question in late 2016, though it became effective as of January 18, 2017. 29 C.F.R. § 2560.503-1 (2017). However, the specific provision within that regulation at issue here was deemed applicable only to claims for benefits filed after April 1, 2018. *Id*. § 2560.503-1(p)(3) (2017). Although the regulation has been subsequently amended, the provision in question remains unchanged to the present. *Compare id*. § 2560.503-1(l)(2)(i) (2017) *with id*. § 2560.503-1(l)(2)(i) (2020).

Defendant contends that an arbitrary and capricious standard of review applies because the plan expressly assigns discretionary authority to the plan administrator and plaintiff never requested information about the benefit calculation pursuant to the plan's "Routine Questions" guideline [Doc. 18-1, pp. 6–7 (citing Doc. 13-1, p. 60 ("If there is any question about a claim payment, an explanation may be requested from the Employer who is usually able to provide the necessary information."))].  Defendant submits that beyond requesting plaintiff's earnings information from TForce, it did not make its own determination of plaintiff's "Predisability Earnings" [*Id.* at 7].    Even if §  2560.503-1(l)(2)(i) applies, defendant argues that Labor commentary clarifies that this regulation is not intended to usurp district courts' authority to apply appropriate standards of review [*Id.*].  It contends that Sixth Circuit case law precludes such an application of the regulation [*Id.* at 7–8 (citing *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988))].

In their respective responses to the cross-motions for summary judgment, both parties largely reiterate the same arguments originally raised in their memoranda in support of summary judgment as to this issue [*see* Doc. 19, pp. 2–4; Doc. 20, pp. 2–5].  Plaintiff notes that his appeal requested defendant "to consider both evidence of his continued disability and evidence that its benefit calculation was incorrect" [Doc. 19, p. 2].  He also argues that defendant's citation to *Daniel* is outdated because that case predates the 2017 regulation that he cites in support of mandatory *de novo* review [*Id.* at 3].  Defendant, for its part, asserts that plaintiff's citation to out-of-circuit cases are unavailing with respect to the continued applicability of *Daniel* [Doc. 20, pp. 4–5].

6

In a similar manner, the parties' reply briefs retrace existing arguments [Doc. 22, pp. 2–4; Doc. 24, pp. 2–4]. Of note, defendant further attempts to distinguish plaintiff's citation to *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998 (7th Cir. 2019) by arguing that the Sixth Circuit's precedents are more broadly out of step with those of the Seventh Circuit; therefore, it points once again to Labor's commentary [Doc. 22, p. 3].

### a. Strict Compliance with ERISA Regulations

When selecting the appropriate standard of review applicable to a plan administrator's decision under ERISA, courts first determine whether the plan, itself, commits discretionary authority to its administrator. *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 264 (6th Cir. 2018). If not, "a plan administrator's denial-of-benefits decision is reviewed *de novo*." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "But if the plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' we review such decisions under the arbitrary-and-capricious standard." *Id.* (quoting *Firestone*, 489 U.S. at 111, 115).

However, Labor has determined that even if a plan commits discretionary authority to its administrator or fiduciary, arbitrary and capricious review may be forfeited as to certain claims where the plan administrator fails to strictly comply with ERISA requirements. *See* 29 C.F.R. § 2560.503-1(l)(2)(i). The regulation states:

> In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan, except as provided in paragraph (l)(2)(ii) of this section. Accordingly,

7

the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. If a claimant chooses to pursue remedies under section 502(a) of the Act *under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary*.

*Id.* (emphasis added).

Central to the parties' dispute over the applicable standard of review is whether plaintiff properly appealed his benefit *calculation*—not solely his *eligibility* for coverage—and, if so, whether defendant responded to this facet of plaintiff's appeal. The Court finds that plaintiff appealed his benefit calculation in the first instance. His notice of appeal dated July 10, 2023, states: "[f]irst, this letter serves as Mr. Dougharty's written appeal of *the amount ($3,854.94)* that MetLife has calculated as his monthly benefit" [Doc. 13-9, p. 39 (emphasis added)]. Defendant asserts that plaintiff's request was improper because he did not first ask his employer about the benefit calculation [Doc. 20, p. 3]. But the provision to which defendant cites in the plan does not support its interpretation. As an initial matter, the "Routine Questions" provision regarding "claim payment" arguably encompasses a separate set of inquiries than where, as here, an insured seeks to challenge defendant's *calculation* of benefits—not its payment [*See id.*]. More importantly, the claim and appeal process set forth in the subsequent paragraphs nowhere requires an insured to 'exhaust' his claim by first requesting information from his employer [*Id.* at 60–61].

Defendant appears to view plaintiff's appeal of July 10, 2023, as solely contesting benefit eligibility. But this consolidation of distinct grounds for appeal is not supported by ERISA or defendant's plan. To the contrary, the procedures outlined for "Initial

8

Determination" and "Appealing the Initial Determination" expressly envision "den[ying] your claim in whole or in part," presumably confirming that an insured may challenge the amount of benefits to which he is entitled in addition to his eligibility simpliciter [*Id*. at 60; *see also id.* at 62 ("If you have a claim for benefits which is denied or ignored, in whole *or in part*, you may file suit in a state or Federal court") (emphasis added)]. And ERISA regulations define "adverse benefit determination" to include, "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit[.]" 29 C.F.R. § 2560.503-1(m)(4)(i). Moreover, the United States Court of Appeals for the Sixth Circuit has previously reversed a district court's determination that an insured has failed to exhaust his administrative remedies where he "endeavored consistently both to inquire about and to challenge [insurer's] methodology" and the insurer "never demonstrated that it would alter or even consider altering its underlying methodology*." Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 419 (6th Cir. 1998).

In sum, the Court finds that plaintiff appealed his benefit calculation on July 10, 2023. Accordingly, the Court also finds that defendant failed to respond in writing to this aspect of plaintiff's appeal. Although defendant cites to its internal comments in plaintiff's claim log noting that "should the attorney need to question that he would need to go through the ER as there where we collected our information," [Doc. 13-1, p. 503], the record does not reflect, as plaintiff notes, that defendant "provided a written decision responding to his appeal of the benefit calculation" [Doc. 24, p. 3]. Defendant's written notices dated September 26 and October 4, 2023, in which it reversed its previous denial of plaintiff's

9

benefits, nowhere mention a determination or explanation as to his benefit calculation [Doc. 13-1, pp. 599, 610]. February 20, 2024, the date on which plaintiff filed suit, is well past the 45 day timeframe for defendant to respond pursuant to 29 C.F.R. § 2560.503-1(i)(3)(i). Having determined that § 2560.503-1(l)(2)(i) is activated, the Court must determine what effect this relatively new provision may have.

### b. Effect of the 2017 Amendment to § 2560.503-1(l)(2)(i)

Because defendant did not timely respond to plaintiff's benefit calculation appeal, the Court now proceeds to determine whether and to what extent 29 C.F.R. § 2560.503-1(l)(2)(i) dictates the applicable standard of review in this case. Here, defendant's characterization of the law misses the mark. First, it cites *Claims Procedure for Plans Providing Disability Benefits*, 81 FR 92316-01, at *92327 (Dec. 19, 2016) in which Labor explained that, in promulgating § 2560.503-1(l)(2)(i), it "[did] not intend to establish a general rule regarding the level of deference that a reviewing court may choose to give a fiduciary's decision interpreting benefit provisions in the plan's governing documents." Contrary to defendant's assertion that this regulation "merely creates a factual scenario," the commentary goes on to state that "[t]he legal effect of the definition may be that a court would conclude that *de novo* review is appropriate because of the regulation that determines as a matter of law that no fiduciary discretion was exercised in denying the claim." *Id.* at *92328. And Labor asserts that this regulation "relies on the regulatory authority granted the Department in ERISA sections 503 and 505 and is intended to define what constitutes a denial of a claim." *Id.* at *92327. In sum, it appears that this regulation

10

was promulgated for the express purpose of altering a court's calculus as to the applicable standard of review in circumstances where "a plan fails to adhere to all the requirements in the claims procedure regulation." *Id.* at *92327.

Despite this regulatory context, defendant proceeds to cite case law that either predates or does not address § 2560.503-1(l)(2)(i) as amended. First, it discusses *Daniel* in which the Sixth Circuit held that "the standard of review is no different whether the appeal is actually denied or is deemed denied." 839 F.2d at 267. However, this 1988 opinion analyzed a prior version of the regulation. Critically, the provision analyzed in *Daniel* lacked the phrase "without the exercise of discretion by an appropriate fiduciary," which Labor appears to have deliberately added to alter the standard of review. *See id.*; 81 FR 92316-01, at *92327–28. Next, it *cites Martin v. Guardian Life Ins. Co. of Am.*, No. 5:20-CV-507, 2021 WL 2516083, at *3 (E.D. Ky. June 15, 2021) in support of the proposition that *Daniel*'s holding remains operative. Yet, it conveniently elides the United States District Court for the Eastern District of Kentucky's statement therein that "[plaintiff's] claim is governed by the version of the regulation applicable to claims filed after January 1, 2002, but before April 1, 2018" and the court therefore "declines to reach a conclusion on whether the current version of the provision could require *de novo* review[.]" *Id.* at *2, *3 n.2. Nor does defendant acknowledge more recent precedent from the very same court, which holds to the contrary: "if subsection (l)(2)(i) applies, [plaintiff] is entitled to *de novo* review," provided that the claim at issue "[was] filed under a plan after April 1, 2018." *Card v. Principal Life Ins. Co*., No. 5:15-CV-139, 2023 WL 5706202,

11

at *8 (E.D. Ky. Sept. 5, 2023) (citing § 2560.503-1(p)(3)); *see also Jordan v. Reliance Standard Life Ins. Co.*, No. 22-5234, 2023 WL 5322417, at *2 n.1 (6th Cir. Aug. 18, 2023) (recognizing the applicability of § 2560.503-1(l)(2)(i), though not discussing the "exercise of discretion" portion).  Finally, defendant's citation to *Rossiter v. Life Ins. Co. of N. Am.*, 400 F. Supp. 3d 669, 672 (N.D. Ohio 2019) is similarly unavailing because the claim at issue in that case was filed before April 1, 2018; therefore, the United States District Court for the Northern District of Ohio did not have occasion to analyze the amended regulation.

In sum, defendant has not identified persuasive or controlling legal authority that requires this Court to disregard 29 C.F.R. § 2560.503-1(i)(3)(i),[6] which appears *a priori* to have been promulgated through the appropriate administrative review process.  Applying this regulation, it appears that defendant has "fail[ed] to strictly adhere to all the requirements of this section with respect to a claim" because it did not provide a written response to plaintiff's benefit calculation appeal within the prescribed timeframe.  *See* § 2560.503-1(i)(3)(i).

Therefore, plaintiff's "claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary."  § 2560.503-1(l)(2)(i).  Because the plan administrator has not exercised "discretionary authority" to determine plaintiff's benefit calculation appeal, we "review *de novo* the plan administrator's denial of ERISA

---

[6]    Plaintiff notes that § 2560.503-1(i)(3)(ii) provides for an exception to § 2560.503-1(i)(3)(i) where certain conditions are met but argues that defendant is ineligible for this exception [Doc. 17, p. 8].  Defendant did not advance any arguments that it qualifies for such an exception [*see* Docs. 20, 22].  The Court agrees with plaintiff that defendant has not demonstrated that it is eligible for this exception, in part because it has made no showing to this effect.

12

benefits." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). Specifically, this Court reviews *de novo* defendant's benefit calculation. "This *de novo* standard of review applies to the factual determinations as well as to the legal conclusions of the plan administrator." *Id.* (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir. 1997)).

As part of *de novo* review, general principles of summary judgment under Federal Rule of Civil Procedure 56 apply. Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). Furthermore, all facts and inferences that the Court draws from the record before it must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). When assessing the parties' cross-motions for summary judgment "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

The court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question

13

for the factfinder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III.    Analysis

Plaintiff argues that the relevant terms of the plan are unambiguous and require that his predisability earnings be calculated "based on what he was earning at the first of the year prior to his date of disability" [Doc. 17, p. 9]. In advancing this argument, he rejects defendant's deference to his employer's "benefits base pay" rate as such a figure was not specified in the plan, itself [*Id.* at 13]. Instead, he argues that his wages should be calculated by multiplying his mileage pay rate of $0.24 per hour by the number of hours he drove throughout January 2020 [*Id.* at 9–11]. Based on an average of 7,159 miles driven per week in that timeframe, he ultimately arrives at a predisability earnings amount of $7,445.88 and a monthly benefit of $4,467.53 [*Id.* at 11]. Alternatively, if the Court finds that the terms are ambiguous, plaintiff argues that the doctrine of *contra proferentum* favors construing the plan against the drafter [*Id.* at 12–13].

14

Defendant contends that it followed its standard procedure[7] of requesting a predisability earnings figure from plaintiff's employer and adopting that figure [Doc. 18-1, pp. 9–10]. Further, it argues that plaintiff's preferred method of calculation is unsupported by the plain language of the plan [*Id*. at 10–11]. Specifically, it asserts that the plan's phrase " in effect on the first of the year" cannot reasonably refer to some period of days after the start of the year [*Id*. at 11]. Additionally, defendant objects to plaintiff's calculation of an average of 7,159 miles driven per week in January 2020 on grounds that he selectively chose two weeks in January and disregarded two other weeks [*Id*. at 11–12]. Finally, defendant argues that such a figure cannot reasonably form the basis of his benefit calculation because it is unrepresentative of his average driving distances throughout the remainder of the year [*Id*. at 12].

In response to defendant's motion, plaintiff argues that his calculations are consistent with the plan's language because he derived an average of the miles he drove during January 2020 and multiplied this average by his per mile wage rate [Doc. 19, pp. 5–6]. Additionally, he challenges defendant's blind reliance on a prior year's W-2 income as there are numerous situations in which an employee's income would not correlate to the

---

[7] Defendant indicates in a footnote that it has subsequently received and/or provided additional information about TForce's underlying calculation after plaintiff filed his suit [Doc. 18-1, p. 10 n.3]. However, the Court may not consider this information for purposes of ruling on the parties' instant motions because ERISA suits are decided on the basis of the closed administrative record at the time of filing suit. *Moon v. Unum Provident Corp*., 405 F.3d 373, 378 (6th Cir. 2005) (holding that ERISA review is appropriately confined to the administrative record as it exists when the plan administrator issues its final decision).

15

prior year's average [*Id*. at 6]. Plaintiff again notes that the plan, itself, does not refer to the "benefits base pay" figure requested by defendant and provided by TForce [*Id*. at 7].

In response to plaintiff's motion, defendant argues that the term "on" as used in the phrase "in effect on the first of the year" can only reasonably refer to the first day of the year; that is, January 1 [Doc. 20, p. 6]. It further contends that the second sentence of this provision, stating that the amount will be calculated "on a monthly basis," cannot be read to convert the entire provision into a monthly calculation [*Id*. at 6–7]. Defendant also rejects plaintiff's calculation on grounds that he ignored the two weeks of January 12 and 26, 2020, in reaching his monthly average [*Id*. at 8]. It further notes that if plaintiff's preferred calculation is extrapolated to an annual rate of compensation, it totals $89,350, well beyond the annual compensation plaintiff has previously reported [*Id*.].

In reply, plaintiff defends his calculation because he was allegedly paid for only the two weeks he cited in January [Doc. 24, p. 4]. He further emphasizes that the terms of the plan, and not defendant's ordinary practices with respect to requesting employee compensation figures, govern this dispute [*Id*. at 5].

Defendant replies by noting that even in view of plaintiff's wage-based earnings, the plan language cannot be reasonably read to refer to wages earned after the first of the year as they would not be "in effect" at that time [Doc. 22, p. 5].

Courts tasked with interpreting ERISA plan provisions apply "general principles of contract law" to determine meaning "in an ordinary and popular sense." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)

(quoting *Williams v. Int'l Paper Co*., 227 F.3d 706, 711 (6th Cir. 2000)).  "In other words, the Plan Administrator 'must adhere to the plain meaning of [the Plan's] language as it would be construed by an ordinary person.'"  *Id*. (quoting *Kovach v. Zurich Am. Ins. Co*., 587 F.3d 323, 332 (6th Cir. 2009)).  "A term or provision is ambiguous 'if it is subject to two reasonable interpretations.'"  *Wallace v. Oakwood Healthcare, Inc*., 954 F.3d 879, 890–91 (6th Cir. 2020) (quoting *Schachner v. Blue Cross & Blue Shield*, 77 F.3d 889, 893 (6th Cir. 1996)).  "Resolving ambiguities in the insured's favor also accords with ERISA's goals 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'"  *Id*. (quoting Firestone, 489 U.S. at 113) (citations omitted).

The Court finds that the "Predisability Earnings" provision is ambiguous.  This ambiguity arises from the provision's interchangeable treatment of "salary" and "wages," despite the fact that these terms refer to distinct concepts.  "Salary" has been defined as "[f]ixed payment made periodically to a person as compensation for regular work."  *Salary*, *Oxford English Dictionary Online*, https://doi.org/10.1093/OED/2376338795 (last visited Mar. 7, 2025).  "Wage," by contrast, has been defined as "[a] payment to a person for service rendered."  *Wage*, *Oxford English Dictionary Online*, https://doi.org/10.1093/OED/2801008338 (last visited Mar. 7, 2025).  In other words, whereas a salary is a "fixed" number requiring no further data to compute, wages necessarily require the multiplication of one's rate of compensation by some measure of work output.  Given this distinction, the provision's reference to "wages . . . in effect on

17

the first of the year prior to the date Your Disability began" is ambiguous on its face. If, as defendant argues, this phrase pins the determination solely on January 1 of the relevant year, how can a multiplication-based figure like wages be calculated when multiplied by zero days or miles worked? The provision's statement that "[w]e calculate this amount on a monthly basis" would seemingly suggest that one month's earning data, rather than a single date, should inform the calculation, but defendant argues this statement means something else entirely [*See* Doc. 20, pp. 6–7 ("'[M]onthly basis,' implying that the amount resulting from the first sentence would need to be converted to a monthly rate, not that any specific month's worth of wages are used.")]. In sum, the calculation of wages set forth in the "Predisability Earnings" provision is susceptible to more than one reasonable interpretation and is therefore ambiguous. *See Wallace*, 954 F.3d at 890–91.

Because this provision is ambiguous, the doctrine of *contra proferentum* applies and the Court will construe the provision in plaintiff's favor. "To the extent that the Plan's language is susceptible of more than one interpretation, we will apply the 'rule of *contra proferentum*' and construe any ambiguities against [defendant] as the drafting part[y]." *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846–47 (6th Cir. 2000) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d, 550, 557 n.7 (6th Cir. 1998)); *Trustees of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 493 (6th Cir. 2024) (noting that to the extent "base wage" is ambiguous, it should be construed in favor of the insured). However, this construal does not necessarily dictate that the Court agree with plaintiff's actual calculated benefit amount.

After carefully reviewing plaintiff's earning statements contained in the record, the Court agrees with defendant that critical information is missing, and the present record is therefore incomplete. The statements cover periods from December 22, 2019, to December 28, 2019; January 5, 2020, to January 11, 2020; and January 19, 2020, to January 25, 2020 [Doc. 13-9, pp. 27–27]. Thus, the record does not indicate plaintiff's earnings or driving miles between December 29, 2019, to January 4, 2020; January 12, 2020, to January 18, 2020; or January 26, 2020, to January 31, 2020 [*See id*]. If, as plaintiff claims, "the regular wages he was earning as of the first of the year included these two weeks only," he should be able to adduce evidence that, for example, his earnings statements from the omitted periods indicate a gross pay of $0 [Doc. 24, p. 4]. But closer inspection of the earning statements only confirms the fact that plaintiff appears to have omitted non-zero statements. The "Year to Date" column indicating the gross pay that plaintiff had earned for each period jumps from $5,058.54 to $10,849.49 between the January 17 and January 31, 2020, statements [Doc. 13-9, pp. 26–27]. Given that the latter statement indicates an additional $2,729.73 within that time frame, this leaves approximately $3,000 in unaccounted, accrued compensation that plaintiff appears to have received in January 2020, but that he has omitted from his calculation.

Synthesizing the foregoing analysis, while the Court may construe the plan in plaintiff's favor based upon the ambiguity in its "Predisability Earnings" provision, the record lacks sufficient factual material for the Court to rule, as a matter of law, that plaintiff is entitled to the exact sum he requests. As defendant argues, it is entirely possible that

even one additional week's driving miles could impact the average such that plaintiff is already receiving a *greater* benefit calculation than he is owed under the plan construed in his favor [*see* Doc. 18-1, pp. 12–13]. So, the Court finds that a genuine dispute of material fact remains as to plaintiff's wages during the relevant period of time. Summary judgment is therefore inappropriate. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 250.

Although relatively uncommon in an ERISA dispute,[8] the Court therefore **DENIES** plaintiff's Motion for Summary Judgment on the ERISA Record [Doc. 16] and **DENIES** defendant's Motion for Judgement on the Record [Doc. 18]. Based on the foregoing analysis, the Court does not conclude that defendant has shown that it is entitled to summary judgment under its interpretation of the plan's calculation method. The Court also lacks sufficient evidence in the record to hold that plaintiff is entitled to his requested benefit amount. "Such broad disagreement makes summary judgment in either party's favor inappropriate, as it would require the court to make credibility determinations and weigh evidence." *Cent. States, Se. & Sw. Areas Pension Fund v. Transp. Serv. Co*., No. 00-C-6181, 2009 WL 424145, at *13 (N.D. Ill. Feb. 17, 2009) (denying cross-motions for summary judgment in ERISA dispute where certain factual issues remained contested). However, this Memorandum Opinion and Order should narrow considerably the remaining

---

[8] Although uncommon, this outcome is not unprecedented. *See* 2 Lee T. Polk, *ERISA Practice and Litigation* § 11:72 (2025) ("Courts will normally decline to rule by summary judgment where there are one or more key terms relating to material facts in a writing that are ambiguous and require specific findings of fact.")

issue(s) in dispute, given the Court's findings regarding the "Predisability Earnings" provision within the plan.

## IV. Conclusion

For the reasons explained above, plaintiff's Motion for Summary Judgment on the ERISA Record [Doc. 16] is **DENIED**, and defendant's Motion for Judgement on the Record [Doc. 18] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE